UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GIOTTO GERMANY,

       Plaintiff,                    Case No. 21-10879

v.                                      HON. MARK A. GOLDSMITH

DEREK WATKINS,

       Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 11)**

Plaintiff Giotto Germany brings this 42 U.S.C. § 1983 action against Defendant Derek Watkins, a police officer employed by the City of Warren. Compl. (Dkt. 1). This matter is before the Court on Watkins's motion for summary judgment (Dkt. 11). Germany filed a response to the motion (Dkt. 13), and Watkins filed a reply (Dkt. 19). For the reasons stated below, the Court denies the motion.[1]

**I. BACKGROUND**

This action arises from an encounter between Germany and Watkins in which Watkins arrived at Germany's home in responding to a 911 call. Compl. ¶¶ 15–18; Mot. at 10.[2] An individual who Germany contends was an intruder and who Watkins contends was Germany's tenant made the 911 call after a dispute with Germany. Compl. ¶ 17; Mot. at 10. After arriving at Germany's

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

[2] Although the Court cites the complaint in the background section, it does not take the allegations as true. Rather, because discovery has not commenced, the Court cites the complaint merely for background purposes.

home, Watkins told Germany that, if Germany did not want the individual in his home, he should file eviction proceedings against the individual. Compl. ¶ 33; Mot. at 10. Germany states that Watkins also told him that he could not enter one of the bedrooms in his home because the individual had established residency there and that, if he did enter the bedroom, he would be breaking the law, and Watkins would return and arrest him. Id. ¶¶ 59, 64; Resp. at 1. Germany called 911 and told the 911 operator that Watkins "said I'm breaking the law if I go in my room." Resp. at 5. Watkins then arrested Germany and transported him to the Warren Police Station. Compl. ¶¶ 70–72; Mot. at 10–11. Watkins prepared a warrant that stated that Germany did "unlawfully summon, as a joke, prank, or otherwise without good reason, [by] phone the Warren Police" to his address, "where such service was not required." Police Report and Warrant (Dkt. 13-8).

Germany was charged with violating a City of Warren ordinance that states that "[n]o person shall summon, as a joke or prank, or otherwise without good reason therefor, in any manner whatsoever, the police . . . or any public service, to go to any address where such service is not required." Resp. at 5–6; City of Warren Code of Ordinances § 22-24(b) (Dkt. 13-10). Germany was unable to post bond, and he remained in custody pending trial. Compl. ¶¶ 99–100.

On the date scheduled for Germany's bench trial at the 37th District Court, Germany signed a form titled "Motion to Amend and/or Dismiss," which contained the following provision:

> As a condition of this plea agreement (whether this case is dismissed or not), Defendant agrees to release the City, its officers, employees and agents from any and all claims, damages or causes of action of any kind because of alleged injuries or other damages suffered by Defendant, heirs of assigns that arise from the incident which gave rise to the prosecution in this case. It is stipulated between the parties that this release-stipulation agreement: 1) is voluntary; 2) that there was no prosecutorial misconduct; and 3) enforcement of this agreement will not affect the public interest. Stamps v. Taylor (Mich. Ct. App. 1996).

3/5/20 Mot. to Amend and/or Dismiss (Dkt. 13-16). Germany also agreed not to improperly call 911 for 90 days. 3/5/20 Bench Trial Trans. at 3 (Dkt. 13-15). He was released from custody sometime after signing the agreement.[3]

At a review hearing three months later, Germany signed another form titled "Motion to Amend and/or Dismiss." Resp. at 9. The form was identical to the first one, and it contained the same release provision. 7/23/20 Mot. to Amend and/or Dismiss (Dkt. 13-17). The City agreed to dismiss the charge against Germany. Id.; Mot. at 11. Germany's attorney moved to dismiss the case, and the court granted the motion. 7/23/20 Review Hr'g Trans. at 3 (Dkt. 13-18).

Germany later filed this action, asserting federal claims based on false arrest and malicious prosecution and related state-law claims.

## II. ANALYSIS[4]

Watkins argues that Germany released the City, its officers, employees, and agents from civil liability in connection with the events surrounding his arrest in exchange for the dismissal of the charge against him. Mot. at 21. Watkins contends that the two release agreements that Germany signed are voluntary and enforceable and, therefore, bar Germany's claims. Id. However, as explained below, whether the agreements Watkins relies on were voluntary and enforceable are

---

[3] The parties differ on the date that Germany signed this first agreement. Watkins states that the date was February 5, 2020. Mot. at 16. Germany states that the date was March 5, 2020 and that he was released from custody approximately one week after signing the first agreement. Resp. at 7–9. The parties do not dispute that Germany was in custody when he signed the agreement.

[4] The Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

fact-intensive inquiries, Hill v. City of Cleveland, 12 F.3d 575, 578–580 (6th Cir. 1993), which cannot be determined on the present record, especially when no discovery has taken place.

In Town of Newton v. Rumery, 480 U.S. 386, 392 (1987), the United States Supreme Court held that "release-dismissal agreements," in which individuals charged with crimes release the right to file any civil claims relating to their arrest and prosecution in exchange for the dismissal of criminal charges against them, are not per se invalid. Rather, they must be examined on a case-by-case basis to determine whether they are voluntary and enforceable. Id. at 393. Interpreting Rumery, the United States Court of Appeals for the Sixth Circuit has explained that, before a court may conclude that a release-dismissal agreement is enforceable, "it must specifically determine that (1) the agreement was voluntary; (2) there was no evidence of prosecutorial misconduct; and (3) enforcement of the agreement will not adversely affect relevant public interests." Coughlen v. Coots, 5 F.3d 970, 974 (6th Cir. 1993). "The burden of proving each of these points falls upon the party in the § 1983 action who seeks to invoke the agreement as a defense." Id.

The voluntariness factor has been refined further by the Sixth Circuit to include the following factors: (i) the sophistication of the criminal defendant; (ii) whether the defendant was in custody when the defendant made the agreement; (iii) whether the defendant was represented by counsel who drafted the agreement; (iv) whether the defendant had ample time to consider the agreement before signing it; (v) the nature of the criminal charges and (vi) whether the agreement was formed under judicial supervision. Hill, 12 F.3d at 578.

Analysis of misconduct by authorities requires review of actions taken by prosecutors or police. Marshall v. City of Farmington Hills, 578 F. App'x 516, 523 (6th Cir. 2014). Examples of such misconduct "include situations where, following their use of excessive force, police officers file unfounded criminal charges as bargaining chips to cover up their own conduct or to induce the victim to give up [the victim's] cause of action," or "where a prosecutor, upon

4

discovering that the victim has a meritorious civil claim, files frivolous criminal charges in order to protect the police officers." Coughlen, 5 F.3d at 974. The public interest factor requires an analysis of whether the actions taken by authorities were prompted by legitimate criminal justice concerns, rather than simply avoidance of personal liability. Id. at 975.

Needless to say, this multi-factor analysis is often a fact-intensive inquiry. See Rumery, 480 U.S. at 392 ("Most importantly, the Court of Appeals did not consider the wide variety of factual situations that can result in release-dismissal agreements."). Such a fact-intensive inquiry is premature to undertake before discovery is complete. See Lasalle Town Houses Co-op. Ass'n v. City of Detroit ex rel. Detroit Water & Sewerage Dep't, No. 12–cv–13747, 2014 WL 824917, at *5–*6 (E.D. Mich. Mar. 3, 2014) (finding that because "[n]either party has had the opportunity to marshal sufficient evidence demonstrating the validity or invalidity of the release agreement" and because "[t]he Rumery court made clear that the nature of this defense requires a fact intensive inquiry," "a determination on the Rumery factors and whether the City can rely on the Plaintiffs' release…to bar Plaintiffs' equal protection claim does not appear appropriate at this stage of the proceedings").

This case presents yet another occasion to conclude that factual complexity precludes dispositive treatment of the release issue at this time. Here, the parties make differing arguments about the facts that inform the voluntariness of the agreement and prosecutorial misconduct, and they have not yet had the opportunity to engage in discovery. For instance, Germany argues that he desired to proceed to trial but that, when he appeared in court, he was presented with a release form for his signature, was told to sign it, and was not given any time to review it. Resp. at 17–18. He states that, on both occasions that he signed the agreement, this entire series of events lasted mere minutes. Id. at 8, 10. Watkins asserts that, given the time span between the first agreement and the second agreement, Germany had more than five months to consider the second

5

agreement. Mot. at 15–17. Moreover, Watkins argues that the agreement was executed under judicial supervision because "it was entered as part of the criminal case and was approved by the 37th District Court Judge presiding over that case." Mot. at 17 (citing Francis v. City of Athens, 504 F.Supp.3d 742, 751 (S.D. Ohio 2020)). Yet Germany asserts that neither the court nor any party at his court dates mentioned the existence of a release agreement, and that there is no evidence to indicate that the court approved of any release of liability. Resp. at 18. In addition, the parties dispute whether Germany did in fact comply with the terms of the first agreement, compare Resp. at 15–16 (alleging noncompliance), with Mot. at 11 (describing compliance), which Germany contends bears on his sophistication. The parties also present conflicting versions of the circumstances surrounding Germany's arrest and the police conduct at the time of his arrest. See Resp. at 19–20; Reply at 10–11.

Because the enforceability of a release-dismissal agreement necessitates a fact-specific determination, discovery is crucial for testing which factual positions are tenable and which are not. Yet Watkins filed the instant motion before discovery has even begun. In fact, no scheduling order has yet been entered. His motion is unquestionably premature. Germany's release agreements may be voluntary and enforceable as Watkins argues, but the Court is not presently in a position to make this determination.

### III. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for summary judgment (Dkt. 11).

SO ORDERED.

Dated: December 21, 2021  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
 United States District Judge

6